Ivan SZILVASSY, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 73 Civ. 4272 (CHT).

United States District Court, S. D. New York.

July 12, 1979.

Jesse C. Sable, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., Southern District of New York, New York City, for the Government; Michael H. Dolinger, Asst. U. S. Atty., New York City, of counsel.

## OPINION

TENNEY, District Judge.

On October 11, 1973, Ivan Szilvassy commenced this personal injury action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq.; he claimed that he was injured when struck by a United States Postal Service vehicle. The Government now moves, as it has previously, for an order pursuant to Federal Rules of Civil Procedure 37(b) and (d) ("Rules") dismissing the Complaint and awarding the Government the expenses incurred in making this motion. The Government bases its motion on Szilvassy's alleged continuing and unexcused failure to meet his discovery obligations. For the reasons given below, the motion is granted.

### Background

In an opinion dated July 13, 1976, this Court addressed the discovery problems in this action to that date and denied a motion to dismiss the Complaint, but ordered Szilvassy's counsel to pay the reasonable expenses, including attorney's fees, that the Government incurred in making that motion. 71 F.R.D. 589 (S.D.N.Y.1976). Rather than restating the background set out in that Opinion, the Court will summarize the conclusions stated there and then set out the developments, or lack thereof, since then.

In its July 13, 1976 Opinion, the Court stated at the outset that the conduct of Szilvassy's then counsel displayed serious neglect countenanced neither by the Rules nor by the Canons of Ethics. Id. at 592. Among the factors that led it to that conclusion were the following: Szilvassy's first responses to the Government's interrogatories and requests for documents were plainly inadequate, displaying a lack of effort and resulting in otherwise unnecessary motion practice; a second set of answers and documents, this time provided upon the direction of the Court, was also inadequate, appearing—as with the first set—"to have been calculated to thwart the orderly process of discovery"; a third set of answers, prompted by the Government's motion, did not cure the previous inadequacies; and plaintiff made no attempt to supplement responses as required by Rule 26(e). Id. at 592–93. Additionally, he failed to provide the requisite medical release forms and to appear at either of two hospital depositions or at his physical examination, in the last case neither requesting an adjournment nor explaining his absence. Id. at 593. Moreover,

[t]here has never been any claim by plaintiff or his counsel that any of the notices or correspondence in this case [was] not received. There has never been any attempt to oppose discovery requests based on substantive objections and, in fact, all of the Government's discovery requests to date have been quite proper. Plaintiff's counsel consistently avoided timely requests for adjournments in favor of eleventh hour requests. Letters and phone calls from the Government were

routinely ignored. In sum, the Court sees a conscious attempt to obstruct discovery at every turn.

*Id.* at 593. Despite this egregious record, the Court was unwilling to dismiss the Complaint because it was uncertain of the extent to which Szilvassy himself was at fault. *Id.* at 594.

Since then, Szilvassy has continued to court a dismissal. His obstructive behavior at his deposition necessitated appearances before the Court to compel him to answer the Government's questions. On January 25, 1977, the Court directed him to answer all of the Government's questions, Tr. 5–7, Exh. C to Notice of Motion, and stated: "The entire record of this case has been an attempt to foreclose discovery by the government and, . . . I am on the verge of dismissing this case completely." *Id.* at 6. On January 31, 1977, the Court refused to allow delay beyond a day or so for substitution of Szilvassy's counsel and concluded that the case "probably should have been dismissed some time ago." Tr. 7–8, Exh. C–1 to Notice of Motion. The Government alleges that, although the deposition continued, it was unnecessarily lengthy and unsatisfactory because of Szilvassy's original refusal to answer questions, his inadequate responses to prior discovery requests, and his repeated claim of inability to appear because of illness. Affidavit of Michael H. Dolinger, sworn to Apr. 17, 1979, ¶ 10 ("Dolinger Aff.").

Regarding one other aspect of discovery, the Government served Szilvassy's counsel with a Supplemental Notice for Production of Documents to obtain information regarding plaintiff's claimed loss of income. In his typical fashion, he did not respond. He neither produced the documents nor sought an extension nor objected to the demand. *Id.* ¶ 13. He did not respond to the Government's subsequent letter demanding compliance, Letter from Michael H. Dolinger to Jesse C. Sable, dated Mar. 19, 1979, Exh. E to Notice of Motion. Dolinger Aff. ¶¶ 14–15.

The Government also complains of Szilvassy's failure to file supplemental answers to its interrogatories. The first two sets of answers were inadequate, as noted above. Szilvassy, under questioning, indicated that the third set was also incomplete. *Id.* ¶¶ 16–17. The Government requested a complete set of answers, and plaintiff's counsel, on April 27, 1977, agreed to provide them, Deposition of Szilvassy, Apr. 27, 1977, at 1006–08, Exh. G to Notice of Motion, but he neither provided them nor requested additional time to do so. *Id.* ¶ 18. Plaintiff is now more than two years in default on this demand.

Finally, the Government complains of Szilvassy's alleged conversion of the deposition transcripts. The Government provided Szilvassy with the original transcripts of his depositions for the "purpose of reviewing, correcting, signing and notarizing them, and I will return them . . . when I have completed my review." *Id.* ¶ 20; Signed Statement of Szilvassy, Exh. I to Notice of Motion. On the same date, the Government sent a letter to Szilvassy's counsel regarding the transcripts. Dolinger Aff. ¶ 21; Letter from Dolinger to Sable, dated Apr. 20, 1977, Exh. J to Notice of Motion. Violating both Rule 30(e) and his written agreement, Szilvassy has failed either to sign the transcripts or return them unsigned. Dolinger Aff. ¶ 24. His counsel allegedly refuses to return the transcripts until the Government gives him a free copy. *Id.* ¶¶ 25–26. The Government argues that, given the repeated abuses of the discovery process outlined above, its requested relief should be granted despite the severity of the sanctions.

Szilvassy's counsel responds with a general attack on the Government's discovery and then with a few specific objections to elements of that discovery. He decries "discovery procedures that stagger the imagination and have truly breached all bounds of reason and comprehension," Affidavit of Jesse C. Sable, sworn to May 14, 1979, ¶ 5 ("Sable Aff."), and compares them unfavorably with other discovery in his experience. Specifically, he contends that the Government, by its discovery, discouraged one attorney after another from represent-

ing Szilvassy; that it never provided plaintiff with copies of various examinations, including all of Szilvassy's deposition; and that, contrary to the Government's contentions, it never requested supplementary answers during the two years that Szilvassy's present counsel has been representing him. He concludes by contending that Szilvassy has been denied his day in court.

### Discussion

■ Rule 37(b)(2) provides:

> If a party . . . fails to obey an order to provide or permit discovery, . . the court . . . may make . . .:
>
> .    .    .    .    .
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

Rule 37(d) does not require noncompliance with a court order before the sanctions under subsection (b)(2)(A)–(C) may be imposed. It provides:

> If a party . . . fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court . . . on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

> The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c).

■ A dismissal is, of course, a particularly harsh sanction, and it should be used cautiously. *Cine Forty-Second Street Theatre Corp. v. Allied Artist Pictures Corp.*, 602 F.2d 1062, 1063 (2d Cir. 1979); see *SEC v. Research Automation Corp.*, 521 F.2d 585, 588 (2d Cir. 1975) (default judgment). It should not be used when noncompliance is due to inability to comply rather than willfulness, bad faith, or fault. *Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *Cine Forty-Second Street Theatre Corp., supra*, at 1066–1067. That conclusion has not been altered by an amendment to Rule 37 removing the term "willful." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); *SEC v. Research Automation Corp., supra*, 521 F.2d at 588. But, although the courts should not use this severe sanction freely,

> the most severe in the spectrum of sanctions . . . must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*National Hockey League, supra*, 427 U.S. at 643, 96 S.Ct. at 2781; *Cine Forty-Second Street Theatre Corp., supra*, at 1066.

■ Szilvassy has made this case an appropriate one, and the time has come to take the step that the Court has been on the verge of taking during most of the course of this litigation. He has demonstrated—willfully, in bad faith, and with fault—a continuing disregard of this Court's orders as well as of the provisions and spirit of the discovery rules. In his and his counsel's continued obstinacy, he shows an intent to

circumvent discovery by an apparent attempt to go directly to trial without stopping at the Federal Rules governing discovery. In Szilvassy's counsel's most recent papers, for example, the latter states:

> [W]e do not understand why this case remains on the calendar awaiting trial when so many others, commenced by your deponent in this District Court, have been tried and disposed of. The old axiom, "Justice Delayed is Justice Denied" seems most applicable to this case.

Sable Aff. ¶ 13. With the last statement, the Court agrees; Szilvassy has delayed this case too long.

The examples of delay can be found in all aspects of discovery. In addition to those discovery failures already discussed in the Court's July 13, 1976 Opinion are his refusal to answer questions at his deposition, requiring the Government to seek Court orders compelling him to answer; his failure to respond to the Government's Supplemental Notice for Production of Documents; his failure to supplement his answers to the Government's interrogatories; and his failure to return his deposition transcripts despite his written agreement to do so. Each failure came without notice or with only last minute notice to the Government; Szilvassy and his counsel would simply fail to respond, a petty discourtesy as well as an obstruction of discovery. Given this record, plaintiff's present attacks on the propriety of the Government's discovery are too late as well as unfounded. The Court has previously held the discovery quite within the ordinary and proper. *E.g.*, 71 F.R.D. at 593. Throughout this litigation, Szilvassy had the opportunity to challenge discovery on substantive grounds; instead, he has chosen mere obstinacy and silence.[1]

Similarly, the charge of Szilvassy's counsel that the Government never requested supplementary answers during his representation of the plaintiff is without merit and, what is more, incredible. First, the Government specifically informed counsel of this and other deficiencies by letter. Letter from Dolinger to Sable, dated Mar. 19, 1979, Exh. E to Notice of Motion. Second, an attorney would reasonably study the case files. In doing so, counsel would have learned of the continuing need to supplement Szilvassy's answers. *See, e.g.*, Deposition of Szilvassy, Apr. 27, 1977, at 1006–08, Exh. G to Notice of Motion. Moreover, the Court pointed out that Szilvassy must seasonably supplement his answers, as required by Rule 26(e). 71 F.R.D. at 592. The Court noted then that Szilvassy had made no attempt to comply. *Id.*

The charges of Szilvassy's counsel that the Government has discouraged one attorney after another from representing Szilvassy and that the Government has not met its discovery obligations by failing to provide copies of various examinations are also without merit. As to the first charge, counsel has not supported the charge with any facts, and the record shows that Szilvassy himself "indicated a distrust or displeasure with the continued representations" of one attorney. Tr., dated Jan. 31, 1977, 3:00 P.M., at 2, Exh. 1 to Reply Affidavit of Michael H. Dolinger, sworn to May 17, 1979. As to the second charge, counsel for plaintiff provides no support for the contention that the Government is obligated to provide plaintiff with copies of the various examinations. Apparently, the heart of this charge is a dispute over the transcript of the Szilvassy deposition. Plaintiff's counsel wants a copy of the deposition, but the Government refuses to provide him one until plaintiff pays one-third of the cost. Letter from Dolinger to Sable, dated June 8, 1977, Exh. L to Notice of Motion. Plaintiff appears unwilling to return the original transcripts, which were given him so that he could review, sign, and

---

1. An example may be found in Szilvassy's failure to provide tax returns for 1977 and 1978. His counsel states that he did not see the notice in time to move for a protective order because he was leaving his firm to set up his own office. Sable Aff. ¶ 12. These tax returns are relevant to Szilvassy's claimed loss of income and to his employability. The proffered excuse echoes back to another the Court has heard in this litigation, *see* 71 F.R.D. at 593 (dissolution and reorganization of a law firm), and this excuse is equally inadequate.

notarize them. In failing to return them, signed or unsigned, he is violating his written agreement with the Government. Exh. I to Notice of Motion. Accordingly, the charge is meritless.

Finally, there is no longer any good reason for not dismissing the Complaint. The record now provides ample support for a finding of willfulness, bad faith, and fault on the part of Szilvassy himself. The course of this litigation has been as obstructed with one counsel as with another. Even were Szilvassy less to blame than his counsel (though the Court would no longer reach this conclusion) he is sufficiently at fault for failing to goad his various counsel to comply with discovery obligations of which he has been well aware. His recent failure, in this partial list of failures, to return the deposition transcripts despite an express promise to do so is inexcusable.

In addition to dismissing the Complaint, the Court also awards the Government the reasonable expenses of this motion, including attorney's fees. The Court finds that the failure of Szilvassy and his present counsel to obey the previous orders of the Court and to meet outstanding discovery obligations is not substantially justified and directs that both pay those expenses. *See* Rule 37(b)(2), (d).

### Conclusion

Accordingly, the motion to dismiss the Complaint is granted, and Szilvassy and his counsel are ordered to pay the reasonable expenses, including attorney's fees, that the Government incurred in making this motion.

The matter is hereby referred to the Honorable Leonard A. Bernikow, United States Magistrate, for a hearing and determination of expenses.

So ordered.