**Robert J. WRIGHT and Charles E. Bean**

v.

**The UNITED STATES.**

No. 97–79C.

United States Claims Court.

May 2, 1983.

Robert J. Wright, pro se.

Charles E. Bean, pro se.

Robert L. Bombaugh, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

WOOD, Judge:

This action is presently before the court on defendant's motion for summary judgment and plaintiffs' cross-motion for sanctions.

As the court understands the matter,[1] plaintiffs allege in essence that in May 1963, one Bertrom H. Stafford, a "special agent" of the Treasury Department, on "special assignment" from President Kennedy, entered into an agreement with cer-

tain "parties involved," one of which apparently was "the Oregon Trust." Plaintiffs further allege that, pursuant to that agreement (bearing only the signature of Mr. Stafford), the Treasury Department assumed "full responsibility for the protection of all assets within * * * " the "Evangelical 'Oregon Trust'," including certain mining claims from which uranium ore was taken and purchased by defendant, "during [government] monitoring and auditing."

Plaintiff Wright assertedly owns stock in "the corporation owning mining claims from which uranium was purchased by the United States government." The said mining claims apparently were included among the assets of the "Evangelical 'Oregon Trust'." Plaintiff "Bean is the sole surviving Trustee" of the "Evangelical 'Oregon Trust'." Plaintiffs assert that defendant breached the 1963 agreement by a failure to render accountings of, and to make payment for, the uranium ore taken from the said mining claims and purchased by defendant, and seek an accounting and payment of all amounts owed by defendant pursuant to the agreement.

In the motion for summary judgment now pending, defendant contends that because of a willful failure by plaintiffs to comply with a discovery order of the court, this action should be dismissed.[2] Defendant further contends, however, that in any event neither of the plaintiffs has standing (as a shareholder or officer of a corporation, in a representative capacity, or otherwise) to prosecute the claims asserted herein, and that the action accordingly should be dismissed without trial on that ground.

In their opposition, denominated a "Response to Defendant's Motion for Summary Judgment and Cross Motion for Sanc-

---

1. Plaintiffs' allegations herein are confusing, and in many respects incomprehensible. The summarization appearing herein has required some speculation, during which plaintiffs have been given the benefit of all doubt.

2. Defendant's motion, filed prior to October 1, 1982, refers to Court of Claims Rule 76(b), providing that where a party "willfully fails to comply with an order * * * to answer interrogatories, * * * the court * * * may make such orders in regard to the failure as are just * *." RUSCC 37(b)(2), effective October 1, 1982, authorizes dismissal for failure to obey a court order to provide or permit discovery. *Cf.* RUSCC 1(a)(1).

tions," [3] plaintiffs assert (1) that defendant's motion for summary judgment was filed in violation of both the rules of the court and a pretrial order, and that sanctions should accordingly be imposed on defendant, and (2) that in any event defendant's motion should be denied because of a governmental failure to establish at this point a right to a summary disposition of this case.

Upon a careful consideration of the record, and of the briefs and arguments of the parties, plaintiffs' motion for sanctions is denied.[4] For the reasons and under the authorities hereinafter stated, defendant's motion for summary judgment dismissing plaintiff Wright as a party for lack of standing is granted, and defendant's motion for summary judgment dismissing the complaint in its entirety is also granted.

### I

In their original complaint, filed in March 1979, plaintiffs alleged that, beginning in 1960, the United States "entered into an agreement with plaintiffs pertaining to plaintiffs vast mining claims located in the states of Oregon, Nevada and Utah," and involving principally uranium ore; that at the request of President Johnson and his representatives plaintiffs "permitted their vast financial holdings to be manipulated for the benefit of the United States," and "agreed to keep all transactions secret" until 1978 (when, they alleged, "the 'gag' Order was lifted"); that President Johnson appointed one Bertrom H. Stafford, a Treasury Department special agent, to "audit * * * plaintiffs assets and keep an accounting on all minerals * * * taken from plaintiffs mining claims" and purchased by defendant; that Mr. Stafford's last audit, dated in 1974, showed that defendant owed

plaintiffs in excess of one hundred million dollars; that after President Johnson's death Mr. Stafford disappeared; and that plaintiffs had never been paid "the amounts admitted to be owed * * *."

Defendant moved to dismiss the complaint for failure to state a claim upon which relief could be granted, or, alternatively, for an order requiring a more definite statement of plaintiffs' claim. In October 1979, the motion to dismiss was denied, but plaintiffs were ordered to file an amended complaint setting forth "in detail" (*Wright and Bean v. United States,* 221 Ct.Cl. 913, 915 (1979)):

all facts upon which each claim is based, including the date and place of the alleged agreement; all persons who were a party to the agreement; the date, place and person on whom demand for payment was first made; the exact location of all land and mining claims transferred to the government and the office and date where the transfer was recorded; and a description of all other items of property transferred to the government; (3) whether the alleged agreement was in writing or oral; (4) if in writing plaintiffs are to supply a copy; and (5) if oral, plaintiffs are to state the substance of the agreement as fully as possible, including, for example, the manner and method by which accounts were audited and the dates on which payments were to be submitted.

Plaintiffs timely filed an amended complaint in November 1979. In that complaint (parenthetically, plainly lacking the "detail" called for), plaintiffs alleged that plaintiff Bean was sole surviving trustee of the "Evangelical 'Oregon Trust'," and that plaintiff Wright was a stockholder in Trans-Pacific Enterprises, Inc., "the corporation

---

3. Defendant views plaintiffs' response as a cross-motion for summary judgment in plaintiffs' favor. While that reading of plaintiffs' position is not without some literal foundation, it does not appear to the court to be an accurate one.

4. Plaintiffs assert that defendant filed its motion without the requisite leave of court, and contrary to an outstanding pretrial order on

liability. Court of Claims Rules 101(c) and 114 are cited. The assertions have no merit. Defendant's motion violated neither Court of Claims Rule 101 nor the court order on liability, compliance with which was, in effect, suspended pending this opinion. Court of Claims Rule 14(b)(2). Accordingly, no basis for imposing sanctions against defendant exists.

owning mining claims from which uranium was purchased by * * * " defendant. The amended complaint also alleged (among other things) that a 1963 agreement (described at the outset of this opinion) had been executed by Mr. Stafford, of the Treasury Department, on "Special Assignment"; that in October 1974 an audit had been submitted to and verified by Mr. Stafford [5]; that there had been no audit of the assets in the "Oregon Trust" since October 1974; that Mr. Stafford had disappeared, leaving trust assets "in a state of shambles"; and that defendant had breached the 1963 agreement by failing to supply audits and monitoring to plaintiffs, and by failing "to pay for the uranium ore taken from" the mining claims involved. The amended complaint sought (among other things) damages for breach of the agreement.

Defendant thereupon moved for summary judgment. The Court of Claims also denied that motion, holding that there were "a myriad of potential questions that could be material to the proper resolution of this case" and "better answered by means of the discovery and other procedures available at the trial level," and that, on the record then before it, dismissal of the complaint on motion was not appropriate. *Wright and Bean v. United States,* 224 Ct.Cl. 701, 702–03 (1980). The court remanded the case for "further proceedings consistent with this order." *Ibid.*

In July 1980, defendant served written interrogatories on plaintiffs. Thereafter, dissatisfied with plaintiffs' purported (and unsworn) responses thereto, defendant moved for an order compelling responses to its interrogatories. By order, filed January 28, 1981, defendant's said motion was allowed, and plaintiffs were directed to submit to defendant and to the court, under oath, complete and responsive answers to defendant's interrogatories (with a statement from each plaintiff indicating specifically which interrogatories he had answered).

Plaintiffs thereafter submitted to defendant and to the court their sworn responses to defendant's interrogatories.[6] As defendant accurately notes, those responses are in many respects not only unresponsive but also "virtually incomprehensible." Moreover, they are frequently inconsistent with plaintiffs' earlier unsworn responses. The specific responses made by plaintiffs under oath will be set forth hereinafter to the extent necessary to a proper disposition of the government's motion for summary judgment.

In February 1982, an order requiring pretrial submissions on liability was filed.[7] After receipt of plaintiffs' submission pursuant to that order, defendant again moved for summary judgment, asserting that plaintiffs' claims should be dismissed "for failure to comply with this court's [January 1981] discovery order," and that in any event plaintiffs lack standing to prosecute the claim asserted in this action. Plaintiffs have responded to that motion as indicated above. Briefing has been completed, and the matter is ready for ruling.

## II

Defendant's first contention is that plaintiffs have failed properly to comply with the court's order of January 28, 1981, compelling answers by plaintiffs to defendant's interrogatories, thereby justifying the imposition of sanctions. As defendant sees them, plaintiffs' responses are "vague, evasive and incomplete," and therefore amount to a "willful failure to respond," within the meaning of Court of Claims Rule 76(c).[8]

---

5. The alleged "audit," appended to the complaint, is in fact not an audit in any sense of that word, nor is it even coherent.

6. Plaintiffs also transmitted therewith "numerous exhibits submitted as references to our answers."

7. Proceedings herein were, on defendant's motion, suspended from March 1981 to January 1982 during the pendency of a criminal investigation of plaintiffs. The outcome (if any) of that investigation is not apparent from the record herein. At the expiration of the suspension, the court, *sua sponte,* filed the pretrial order.

8. *See* also RUSCC 37(b)(2).

Defendant concludes that the "degree of plaintiffs' failure clearly justifies dismissal of the action." Plaintiffs' reply is that they have fully complied with the court's discovery order. That reply is, however, grossly inaccurate.

In describing plaintiffs' second, compelled, set of responses to defendant's interrogatories as vague, incomplete, less than fully responsive, and even "virtually incomprehensible," defendant understates the situation. A mere scanning of the responses reveals an absence of clear, direct, and coherent answers to simple and straightforward questions designed to elicit relevant factual information. There are also frequent allusions therein to "exhibits" which are totally unidentifiable. And, the "exhibits" actually furnished are often confusing and undecipherable in terms of meaning, relevance, or both.

For example, defendant's interrogatory 7 asks that plaintiffs (a) state the basis on which they "claim to own a 10% vested interest in the full amount owed,"[9] (b) identify all documents relied upon to support that claim, and (c) identify the person or persons from whom, and the date on which, the interest was acquired.

Plaintiff Wright supplied the following response:

7. The basis on which Robert J. Wright and Charles E. Bean claim to own a 10% vested interest in the full amount owed is the combined total of all stock owned by Charles E. Bean and Robert J. Wright. It is merely an estimate. Some 10,000,-000 shares were authorized.

Plaintiff Bean's answer was that:

7. (a) This is correct. There are many wanting to set me aside but I hope to get this answered by the court by trial, soon.

(b) Document No. 7971995 recorded to protect medical research for the University of Oregon. This shows a recording date of 4/Dec/79. I believe this was sent through the FBI the same as the exhibits requested to be sent by Merril Lynnch [sic] and received 2/Jan/80. see exhibits.

(c) These are not under the control of the trustee.

In response to defendant's interrogatory 18, asking that plaintiffs list all of Mr. Stafford's known addresses and telephone numbers, the period of time each such address and each such telephone number were in use, and the

date, place, and other persons present at each meeting attended by him and any plaintiff or any representative of any plaintiff or the J. Elwyn Wright Educational Research Foundation and Evangelical 'Oregon Trust' or TransPacific Enterprises, Inc.,

plaintiff Bean[10] replied as follows:

I was confined to the so called secrecy of what Representative Jim Weaver calls the James Bond case of the United States. I did not have this privilleged [sic] information. I had strike force government agents treat me like a criminal for fifteen years over this issue. When information was for me some agent of person from government came to me. See exhibit on government representative on No. 10.[11]

Further, when defendant asked:

19. With respect to any asset transferred to Bertrom H. Stafford or Burtrom H. Stafford or the United States pursuant to the alleged agreement:

(a) identify the legal owner of the asset immediately prior to the transfer;

(b) state the date of the transfer;

(c) describe the asset;

(d) identify each document on which the transferor of the asset relied for its claim of ownership;

(e) identify each document effecting such transfer; and

---

9. Such a claim was made by both plaintiffs in an affidavit filed herein July 3, 1979.

10. Plaintiff Bean alone answered this and most of the government's other interrogatories. Plaintiff Wright's responses were quite limited.

11. Plaintiff Bean's answer to Interrogatory 10 did not adequately identify any relevant "exhibit on government representative," and the court is unable to locate any such purported exhibit.

(f) identify each document purporting to state a value with respect to such asset.

plaintiff Bean's entire response was "See exhibit from the Bureau of Mines Portland, Or." The court is unable to locate any such purported "exhibit" at all, much less to find one containing the requested information.

Even interrogatory 8, designed to discover the names of past or present trustees of the "Evangelical 'Oregon Trust'" and the periods of service of each trustee as such, and interrogatory 9, aimed at identifying and ascertaining the contents of any documents relating to the creation of the "Evangelical 'Oregon Trust'," resulted in confusing or unresponsive answers, or worse. Plaintiff Bean's answer to interrogatory 8 was as follows:

> Rev. Atwood Foster and directors of World Vision. Rev. Franklin Graham, son of Dr. Billy Graham may have this information. He replaced Dr. Bob Pierce. My last information was the information was to be used with the Securities investigation by the state of Oregon and got destroyed 25/July/1076 [sic].

Defendant's interrogatory 9, concerning the identity and content of any documents relating to the creation of the "Evangelical 'Oregon Trust'," was not really answered at all.

Plaintiff Bean's earlier, unsworn, answer to interrogatory 7, inquiring as to the basis of his participation in this action, had alluded to his status "as trustee under Oregon law," and his earlier unsworn response to interrogatory 9 had been that "most of our reliance is from Oregon Board since 1962." His sworn responses to these same interrogatories, however, differed materially. His second (if incoherent) answer to interrogatory 7 is quoted above, and his second answer to interrogatory 9 was "same as exhibits for number 8." Whatever those "exhibits" may be, there is absolutely no disclosure at all of potentially relevant informa-

tion to which defendant and the court are entitled, which plaintiff Bean as "trustee" must have (if it exists) and which he was obligated to provide.[12]

 Upon the failure of a party to comply with an order to produce or permit discovery, the court "may make such orders in regard to the failure as are just," including, in an appropriate case, dismissal of part or all of the action or the entry of judgment by default against the party who failed to comply with the discovery order. RUSCC 37(b); *see Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980); *Mangano v. American Radiator & Standard Sanitary Corp.,* 438 F.2d 1187, 1188 (3d Cir.1971). Dismissal or default judgment is, however, not to be adjudged automatically. *Sigliano v. Mendoza,* 642 F.2d 309 (9th Cir.1981); *Jones v. Louisiana State Bar Assn.,* 602 F.2d 94 (5th Cir.1979); *Szilvassy v. United States,* 82 F.R.D. 752 (S.D.N.Y.1979). Such drastic action is, rather, to be imposed only where a failure to comply is attributable to willfulness, bad faith, fault, or disregard of a party's responsibilities, not to a mere inability to comply. *Ibid; see* also *Kropp v. Ziebarth,* 557 F.2d 142 (8th Cir.1977); *Flaks v. Koegel,* 504 F.2d 702 (2d Cir.1974).

It must be and is recognized that plaintiff Bean appears *pro se,* and that his responses are not to be viewed in quite the same fashion as those of a member of the bar of this court. *See, Clinton v. United States,* 191 Ct.Cl. 604, 605–06, 423 F.2d 1367, 1368 (1970). *See* also *White v. United States,* 224 Ct.Cl. 680, 682 (1980) (*pro se* plaintiffs are permitted "somewhat greater latitude" with respect to papers and pleadings than the court would accord an attorney); *Pack v. S.C. Wildlife & Marine Resources Dept.,* 92 F.R.D. 22, 25 (D.S.C.1981) ("A *pro se* litigant is not held to the same high standards as a member of the Bar"), *Williams v. Krieger,* 61 F.R.D. 142, 144 n. 1 (S.D.N.Y. 1973) (referring to "the liberal spirit governing the judging of *pro se* papers").

---

12. As will be seen (Section IIIA, *infra*), plaintiff Wright lacks standing to prosecute the claim here asserted. That lack of standing makes it unnecessary to consider whether his responses, considered separately or in conjunction with those of plaintiff Bean, would merit the imposition of sanctions against him.

The fact of the matter is, however, that plaintiff Bean's responses are so remarkably unrevealing, unresponsive, confusing, incoherent, conflicting, and incomprehensible as to place them far beyond the possibility of a simple inability to comply with an order to produce or permit discovery. Indeed, those responses, to simple and legitimate government inquiries, are so "grossly inadequate" as to amount at least to fault or disregard of responsibilities, if not worse, and thus to warrant the imposition of the stringent sanction of dismissal here sought. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); *see also Sigliano v. Mendoza, supra; Jones v. Louisiana State Bar Assn., supra; Denton v. Mr. Swiss of Missouri, Inc.,* 564 F.2d 236 (8th Cir.1977); *Damiani v. Rhode Island Hospital,* 93 F.R.D. 848 (D.R.I.1982).

The conclusion just stated is fortified by a look at the history of this case. That scrutiny reveals that there has been a persisting, and still uncured, failure adequately to respond to more than one order requiring plaintiffs to furnish to defendant, and to the court, a comprehensive, and intelligible, statement of their claims.

As early as October 1979, the court directed that a statement of plaintiffs' claim, "in detail" must be made, adding that should "plaintiffs fail to comply fully with this order, their petition will be dismissed." *Wright and Bean v. United States, supra.* That requirement has never satisfactorily been met. In January 1981, the court explicitly noted that plaintiffs' prior answers to valid government interrogatories had been inadequate, and ordered that proper responses be submitted. A government request for a warning to plaintiffs that absent full responses dismissal would follow was denied as premature, but the absolute necessity for complete and responsive answers to defendant's interrogatories, if sanctions were to be avoided, was, or should have been, abundantly clear to plaintiffs at that time. Notwithstanding, plaintiffs' subsequent responses to defendant's interrogatories were still incomplete, unresponsive, and incoherent. Indeed, even now, plaintiffs still offer no justification whatever for, nor make any effort to rectify, their continuing factual obfuscation.

One of the purposes of discovery is to afford an expeditious and efficacious method of narrowing and clarifying the basic issues to be litigated in a case, and of ascertaining the existence or whereabouts of factual information relevant to those issues, before trial. *Hickman v. Taylor,* 329 U.S. 495, 500–01, 67 S.Ct. 385, 388–389, 91 L.Ed. 451 (1947); *see also Shelak v. White Motor Co.,* 581 F.2d 1155, 1159 (5th Cir. 1978); *Greyhound Lines v. Miller,* 402 F.2d 134, 143 (8th Cir.1968). The ultimate goal to be secured thereby is "the just, speedy, and inexpensive determination of every action." RUSCC 1(a)(2).

That highly desirable goal has been wholly frustrated here. Instead, this case has required over the years both vast amounts of scarce judicial resources, and the obvious expenditure by the government of considerable time, money, and effort. At least a substantial portion of the court's and the government's labors herein can fairly be attributed to a consistent, persisting, and unjustifiable failure to furnish clear, direct, and understandable responses to simple and straightforward questions concerning facts relevant to the claim asserted by plaintiffs in this case.

There is no indication whatever that further indulgence, forbearance, or the extension of latitude would rectify or even improve the situation. In all the circumstances, it is at last time to conclude that there has been such a "serious or total failure to respond to discovery * * *" as to make dismissal an eminently justified sanction insofar as plaintiff Bean is concerned. *Sigliano v. Mendoza, supra,* 642 F.2d at 310; *Jones v. Louisiana State Bar Assn., supra; Damiani v. Rhode Island Hospital, supra; see also National Hockey League v. Metropolitan Hockey Club Inc., supra; Denton v. Mr. Swiss of Missouri, Inc., supra.*

### III

Defendant further contends that in any event neither of the plaintiffs has standing,

as a shareholder or officer of a corporation, in a representative capacity, or otherwise, to prosecute the claims herein. The contention is meritorious as to plaintiff Wright, and unessential as to plaintiff Bean.

### A

■ The amended complaint alleges that plaintiff Wright is the owner of 375,000 shares of stock in "TransPacific Enterprises Inc. which is the corporation owning mining claims from which uranium was purchased by the United States Government." His sworn response to a government interrogatory is that his claim of right to recover herein is based on his "possession of 350,000 shares of stock in TransPacific Enterprises incorporated"; he deposes further that "The agreement was 350,000 shares of stock for all services [performed by him for the Evangelical Oregon Trust] which includes counseling in this case. I agreed to get the case to trial and see it through to it's conclusion."[13] He is "acting as [his] own attorney and prosecuting this case on [his] own behalf."

Defendant contends that even if it be assumed that the corporation in which plaintiff Wright is a shareholder "had an agreement with the United States [for the purchase of uranium] which has been breached," neither that fact nor any other, including any "agreement" relating to plaintiff Wright's "services" in connection with the prosecution of this case, confers upon plaintiff Wright any standing to sue defendant for breach of the said agreement.[14] The contention is valid. In the circumstances of this case, plaintiff Wright lacks standing to sue, and he must accord-

ingly be dismissed as a party to this action. *Robo Wash, Inc. v. United States,* 223 Ct.Cl. 693, 695 (1980); *Algonac Mfg. Co. v. United States,* 192 Ct.Cl. 649, 662, 428 F.2d 1241, 1249 (1970); see also *Associated Furniture, Inc. v. United States,* 227 Ct.Cl. —— (1981).[15]

Plaintiffs' reply brief does contain a suggestion that as of 1981 plaintiff Wright may have become a "Shareholder" in something called the "Evangelical Oregon Trust," a "Free Market Business Trust." All else aside, the suggestion provides no basis for any different result. That such a suggestion would appear inconsistent with the amended complaint herein, and with plaintiff Wright's own sworn statements in 1981, accordingly need not be explored.

### B

Plaintiff Bean asserts, both in the amended complaint and in his responses to defendant's interrogatories, that he is a trustee of the "Oregon Trust" (or "Evangelical 'Oregon Trust' "). Defendant urges that plaintiff Bean too lacks standing, for failure to establish that he is a trustee of a trust that is, under the laws of Oregon, a valid one having capacity to sue. Thus, defendant says, even were dismissal pursuant to RUSCC 37(b) not appropriate, its motion still should be granted.

While there is grave doubt on the present record that as of 1963 the "Evangelical 'Oregon Trust' " was a valid and enforceable trust under the laws of the State of Oregon (or, for that matter, of any other jurisdiction), it is unnecessary to pursue this aspect of the matter. Plaintiff Wright plainly lacks standing to prosecute the

---

**13.** On occasion, plaintiff Wright has signed documents pertaining to this case as "General Counsel, Evangelical Oregon Trust." By order, dated December 8, 1980, the court ordered and directed that (in the absence of a showing, never made, that he was a member in good standing of the bar of an identified jurisdiction authorized to admit attorneys to practice) plaintiff Wright should refrain from representing himself in any manner as "general counsel," or as an attorney, in any matter related to this proceeding. Even were he an attorney, however, an "agreement" concerning services

rendered in this litigation (or otherwise) would not confer standing to sue upon him.

**14.** Defendant accurately notes, however, that the corporation was neither a party to the May 1, 1963, agreement upon which plaintiffs here rely, nor was it even mentioned therein.

**15.** To the extent, if any, plaintiff Bean's standing to sue were based solely on his status as a corporate shareholder, officer, or director, he too would have to be dismissed as a party here, on the allegations of the amended complaint.

claims here involved. And, even assuming plaintiff Bean to have such standing, defendant's motion for summary judgment would still have to be granted, since, as to plaintiff Bean, imposition of the sanction of dismissal is entirely justified. Accordingly, the complaint will be dismissed pursuant to Rule 58.