**ANCHOR ESTATES, INC.**

v.

**The UNITED STATES.**

**DAKOTAVILLE, INC.**

v.

**The UNITED STATES.**

**Nos. 228–81L, 229–81L.**

United States Claims Court.

Feb. 11, 1987.

William R. Mills, Bismarck, N.D., for plaintiffs.

Fred R. Disheroon, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, for defendant; Michele A. Guisiana, of counsel.

## OPINION

YOCK, Judge.

These two consolidated inverse condemnation cases are before the Court on defendant's motion to dismiss for plaintiffs' failure to comply with the Court's order to compel discovery and for failure to prosecute. For the reasons discussed herein, defendant's motion is granted and the two cases are to be dismissed.

### Background

On April 13, 1981, plaintiffs filed a complaint in the United States Court of Claims seeking just compensation for the alleged taking of their land by the United States.

Plaintiffs claim that their land was taken by inverse condemnation as a result of the "frequent and recurring flooding [of their land, caused by] * * * the defendant's control of the flow of the Missouri River through dams, particularly the Garrison Dam and the Oahe Dam." Plaintiffs also claim a taking based on erosion and groundwater inundation caused by the defendant's control of the Missouri River flow. Defendant filed its answers in these cases on September 10, 1981.

Almost from the beginning, the parties have had difficulty with each other in conducting voluntary discovery, and have had to invoke the Court's intervention. For instance, on October 29, 1982, the defendant filed a motion to compel answers to its first set of interrogatories. After a review of the defendant's contentions in that motion, the Court found that the plaintiffs had, in fact, answered the interrogatories in an evasive and incomplete manner and thus granted the defendant's motion to compel on November 18, 1982. Likewise on April 18, 1983, the plaintiffs filed a motion to compel answers to their first set of interrogatories. Since the plaintiffs were asking for water project studies that had not yet been completed by the Government, the Court denied the plaintiffs' motion based on the defendant invoking the deliberative process privilege. The Court noted, however, that the defendant did provide the plaintiffs with all the factual data underpinning the various water project studies at issue even though the opinions and recommendations would not be provided until after the projects were finalized by the Government.

Eventually, however, the defendant felt that it had conducted enough discovery to file a motion for summary judgment, which it did on June 4, 1985. After an extensive review of the briefings and other evidentiary matters submitted, the Court denied the defendant's motion because it believed that disputed issues of material fact were still present and that the matter could benefit from further ventilation at trial. *Anchor Estates, Inc. v. United States,* 9 Cl.Ct. 618 (1986). However, the Court took note of the lengthy and contentious discovery history of this case and ordered the parties to get into high gear. In its opinion of March 20, 1986, the Court concluded:

For the reasons stated in the opinion, the Court denies the defendant's Motion for Summary Judgment.

Having denied the Defendant's Motion for Summary Judgment, *the Court notes that this matter has been on its docket since April 13, 1981, some five long years.* Thus, the parties have had ample and sufficient time to complete discovery and prepare for trial on all issues of liability and damages. This being the case, the Court hereby orders:

(1) *the parties shall complete all loose-end discovery on or before June 23, 1986,* and will file a status report on or before that date;

(2) *a pretrial conference is scheduled for July 24, 1986,* to be held at the National Courts Building, Washington, D.C.;

(3) *trial is set to commence on Tuesday, September 9, 1986 in Bismarck, North Dakota.*

IT IS SO ORDERED.

*Anchor Estates, Inc. v. United States, supra,* 9 Cl.Ct. at 622 (emphasis added).

Following the Court's opinion and order, the defendant on April 14, 1986, filed a motion to change the date scheduled for trial from September 9, 1986 until October 6, 1986 since one of the defendant's expert witnesses would be unavailable to testify during the September time frame. There being no objection by the plaintiffs, the Court allowed the motion on May 19, 1986 and reset the trial for October 6, 1986.

On June 23, 1986, the defendant, as ordered, filed a status report which in pertinent part stated:

On May 27, 1986, defendant served its Third Set of Interrogatories to plaintiffs, pursuant to this Court's March 20, 1986, Order that all discovery must be completed by June 23, 1986. Plaintiffs have not yet responded to that discovery. Plaintiffs have served no further discovery.

The United States is prepared to proceed with trial as scheduled, on October 6, 1986.

Also on June 23, 1986, the plaintiffs filed their status report along with a motion for a protective order. The status report stated in pertinent part:

With the exception of the Defendant's tardy Third Set of Interrogatories and Plaintiff's Motion for Protective Order, the case is ready for trial on or after the date set by the Court (September 9th, 1986).

The plaintiffs' counsel also indicated therein that he would have to review certain documents generated by the defendant's expert witnesses "in order to prepare for cross-examination."

The plaintiffs' motion for protective order requested the Court to quash the defendant's outstanding request for information set out in its third set of interrogatories. The plaintiffs' position was that the interrogatories were served on May 27, 1986 and since all discovery was to be completed by June 23, 1986, it could not complete the answers in time to be within the Court's designated discovery cutoff date since only 27 days remained. The plaintiffs noted that Rule 33(a) of the United States Claims Court provided for answers to be served within 30 days.

On July 8, 1986, the Court issued its order which, among other things, extended the parties' discovery period from June 23, 1986 to August 22, 1986, with status reports due on that date, and thereafter denied the plaintiffs' motion for a protective order as moot. Thus, the plaintiffs were implicitly ordered to answer the defendant's third set of interrogatories. In addition, the parties were asked to confer and come up with a mutually acceptable date for a final pretrial conference in late August or early September. The Court again reiterated its earlier order scheduling the trial to commence on October 6, 1986 in Bismarck.

After receiving the pertinent information from the parties, the Court by order dated August 5, 1986, set the final pretrial conference date in this matter for September 9, 1986 in Washington, D.C.

On August 22, 1986, the defendant filed its status report as ordered, in which it stated that the parties had met on August 19 in Omaha, Nebraska and agreed to a stipulation which would be presented to the Court at the pretrial conference. No further alarm was sounded. However, on August 26, 1986, the defendant filed a supplement to its status report of August 22, 1986, in which it brought to the attention of the Court the plaintiffs' newly disclosed intention to employ expert witnesses. The supplement in pertinent part concluded:

Defendant believes this state of the case requires immediate notification to the Court and is thus filing this supplemental report. Under the circumstances, defendant believes that plaintiffs should be precluded from adducing evidence at the trial from experts who were not retained until two—three days prior to the extended close of discovery, or alternatively that the trial date now set for October 6 should be cancelled and a reasonable time for discovery afforded to defendant as to the matters as to which defendant has no prior opportunity to respond.

The plaintiffs filed their status reports on August 27 and September 2, 1986 by leave of the Court, and indicated no special problems were looming. Plaintiffs indicated they were prepared to proceed with trial on October 6, 1986.

On September 5, 1986, just four days prior to the scheduled pretrial conference, defendant filed a Motion for Sanctions or in the Alternative to Compel Discovery, alleging that the plaintiffs had willfully and continuously failed to answer the defendant's properly noticed third set of interrogatories and had thus deprived the defendant of its right to properly and adequately conduct discovery and defend this lawsuit. Specifically, the defendant's motion stated in pertinent part:

5. Defendant's counsel has on numerous occasions discussed the outstanding

interrogatories with plaintiffs' counsel, who repeatedly stated that answers would be forthcoming. Most recently, counsel for plaintiffs and defendant met on August 19, 1986 in Omaha, Nebraska, at which time counsel for plaintiff again informed defendant's counsel that answers to the third set of interrogatories would soon be sent. Plaintiffs' counsel also indicated at that time that he had not hired any experts to testify as witnesses at the upcoming trial and that he did not know what other witnesses he might call.

6. By letter of August 22, 1986 (attachment 4) [plaintiffs] purported to send answers to defendant's third set of interrogatories. A response allegedly answering interrogatories 3—8 was finally sent on August 27, 1986 (attachment 5). In response to interrogatories 4, 5 and 6, which requested information detailing expected testimony from experts, plaintiffs stated that the answers were either not known or not applicable. In response to interrogatory 7, which requested plaintiff to identify and supply any report prepared by any expert identified in the previous interrogatories, plaintiffs stated that the only report it was relying on (a report on the geohydrology of the South Bismarck area, Burleigh County, North Dakota, prepared by Steve W. Pusc, North Dakota State Water Commission) had been furnished at the August 19th meeting in Omaha. Their response to interrogatory 3 was similarly deficient. Plaintiffs stated in response to interrogatory 8, which requested the identity of any other proposed witnesses and documents they would rely on, and a summary of their testimony, that the information would be furnished in connection with the exchange of pretrial materials. These materials, however, merely listed 46 names without a summary of any testimony. Plaintiff has never answered interrogatories 1 and 2.

7. As part of plaintiffs' pretrial submission, sent to defendant September 2, 1986, plaintiffs sent a witness list containing 46 witnesses. None of these individuals was identified as an expert, although resumes of the last two individuals were included, indicating them to be real estate appraisers. There has been no indication whether plaintiffs intend these appraisers to testify at trial as to the value of the lands in question in this litigation or whether appraisal reports have been, or will be, prepared by these individuals. Many of the individuals listed are not identified and there is no indication what any of the listed witnesses will testify about.

8. Plaintiffs have clearly failed to respond to defendant's third set of interrogatories. Their claims should not be permitted to go to trial in light of their willful and continuous failure to answer defendant's properly noticed interrogatories.

In light of the plaintiffs' alleged willful and continuous failure to answer the Government's properly noticed interrogatories and the lateness of the hour, the defendant asked that the Court impose the extreme sanction of dismissal pursuant to Rule 37(b)(2)(C). Alternatively, the defendant requested the Court to delay the trial until such time as the plaintiffs have adequately answered the interrogatories and thereby giving defendant sufficient time to conduct discovery and thus prepare itself for trial.

In response to this motion, the plaintiffs filed their "Resistance to Sanctions" document on September 9, 1986, the date set for the final pretrial conference. Although the document was basically not responsive to the defendant's motion, it also bordered on being incomprehensible, as evidenced by the plaintiffs' concluding remarks:

Responding to Defendant's Motion for Sanctions, Plaintiffs argue no injury was done to Defendant.

Plaintiffs' counsel apologizes to the court for following the local informal practice of advising opposition counsel quickly and with integrity and not following the formal documented procedures apparently necessary and customary in Washington.

Having hopefully spoken to the mote in mine eye, could we now cover the beam in the others.

Mr. Disheroon directed his client to retain the June 1985 Technical Summary in the deliberative process until it could not be used before August 12 to resist his motion to dismiss. Mr. Disheroon failed to have his client retain a copy of this document formally sought under a continuing demand and informally promised after it surfaced August 12, 1985.

This document is almost dispositive of this case. It was first kept over long in the womb and when born, it was promptly aborted. Plaintiff obtained it through outside sources. The Defendant destroyed all available copies.

This may not constitute a customary infraction in the formal arena of Washington. Out here in the outback we would call it obstruction of justice. It never occurs—twice.

Needless to say, the first order of business at the scheduled final pretrial conference held on September 9, 1986 in Washington, D.C., was to decide the defendant's outstanding motion for sanctions. Clearly there was no point in going forward with the normal pretrial conference procedures if the case was to be dismissed or even postponed pending further discovery.

After a thorough review of the defendant's motion with its supporting documentation, and during the course of the hearing held on September 9, it became readily apparent to the Court that plaintiffs' responses to the defendant's third set of interrogatories, dated May 27, 1986, were, in fact, grossly inadequate. As the Court's order filed on September 10, 1986 stated:

These interrogatories requested basic and routine information about the plaintiff[s'] fact and expert witnesses, such as names, addresses, professions, position, educational background, summaries of their expected testimony, and copies of any expert reports. The plaintiff[s'] response (finally furnished on August 22, 1986) indicated that no experts were to be called as witnesses, but that there were to be 46 fact witnesses. The plaintiff[s] failed, however, to list [their] fact witnesses' addresses or give a summary of their expected testimony. On September 2, 1986, seven days before the scheduled pretrial conference in this matter, [and eleven days after discovery was ordered to be complete] the plaintiff[s] indicated in a status report filed with the Court that [they] would call two expert witnesses at the trial * * *.

In the course of this hearing, it also became clear to the Court, that after nearly five and one half years of litigation, the plaintiffs had not yet developed their litigation strategy and, therefore, were unprepared to proceed to trial. Because the plaintiffs were uncertain as to what factual contentions they were asserting, the plaintiffs could not determine what witnesses were needed to present their case and therefore could not provide that information to the Government so that it could properly prepare its defense to this case.

Although the Court believed that plaintiffs failed to engage in proper discovery and violated the Court's discovery orders to have completed its discovery by August 22, 1986, the case was not dismissed at that time. Again, in its order of September 10, 1986, the Court stated:

Since this case has gone on for five years, the Court was very close to granting the defendant's Motion and ordering the termination of this case for failure to engage in proper discovery and for violation of the Court's discovery orders. *However, out of an abundance of caution, and to give the plaintiff[s] a third and final opportunity to present [their] case[s] in a professional manner, the Court is not terminating this matter at this time for the plaintiff[s'] discovery failures,* but is granting the defendant's motion in the alternative. The Court is thus granting the defendant's motion to compel discovery, delaying trial to an appropriate future date, and imposing a strict schedule of activity on the parties * * *. [Emphasis added, footnote omitted.]

The Court concluded the September 10, 1986 order by establishing the following schedule which in pertinent part reads:

1. *Plaintiff[s] will complete all discovery in this matter on or before Tuesday, December 9, 1986. Plaintiff[s] [are] to start immediately to determine the necessary elements of [their] case[s] and to determine how [they] [intend] to present this matter to the Court. [They] [are] to fully answer defendant's Third Set of Interrogatories on or before December 9, 1986.* This includes, but is not limited to, providing the defendant with the names, addresses, and summary of expected testimony for each prospective fact witness and a detailing of professional qualifications for any expert witnesses the plaintiff[s] [have] retained. Any expert reports to be utilized by the plaintiff[s] will be given to the defendant, as well as all the other documents to be relied upon that have not already been given to the defendant by the plaintiff[s]. A status report by both parties will be filed with the Court on or before December 12, 1986. [Emphasis supplied.]

2. Defendant will complete all its discovery on or before Monday, March 9, 1987. A status report will be filed by both parties on or before March 12, 1987.

In its status report, filed December 12, 1986, defendant renewed its motion to dismiss for plaintiffs' failure to adequately respond to the interrogatories and for their failure to complete discovery as directed by the Court in its order of September 10, 1986. Defendant contends that the responses furnished by plaintiffs to the Defendant's Third Set of Interrogatories were, again, "grossly inadequate" in content, and evidenced a failure to complete discovery, which warranted the extreme sanction of dismissal pursuant to Rule 37(b)(2)(C) of the United States Claims Court. Further, the defendant asserts that

the same responses and the plaintiffs' "Analysis (17 Nov. 86)" and "Project (18 Nov. 86)" documents submitted to the defendant, confirm that the plaintiffs have barely begun to prepare their case after nearly six years of litigation, thereby warranting dismissal of the case under Rule 41(b) for failure to prosecute.

The plaintiffs responded to the defendant's latest motion to dismiss with their document entitled "Resistance to Motion," dated January 27, 1987.[1] However, instead of responding to the defendant's contentions regarding adequacy and completion of discovery, the plaintiffs discuss why there is "no [expert] report specifically prepared for this case." The response also tends to confirm that the plaintiffs are blithely continuing with their discovery even in the face of the Court's orders to have completed it.

### *Discussion*

### I.

Rule 37 of the United States Claims Court states in pertinent part:

Rule 37. Failure to Make or Cooperate in Discovery; Sanctions.

(a) Motion for Order Compelling Discovery. * * *

\* \* \* \* \* \*

(2) *Motion.* If a deponent fails to answer a question propounded or submitted under Rules 30 or 31, * * * or a party fails to answer an interrogatory submitted under Rule 33, * * * the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. * * *

\* \* \* \* \* \*

(3) *Evasive or Incomplete Answer.* For purposes of this subdivision an

---

1. Plaintiff also filed another document entitled "Request for Determination" on January 27, 1987. Although it is difficult to discern what the plaintiffs seek in this document, it appears that the plaintiffs are asking for a motion to compel the production of a certain water study, in addition to generally letting off steam. In any event, in view of the decision reached in this opinion, the "motion" is denied as moot.

evasive or incomplete answer is to be treated as a failure to answer.

\* \* \* \* \* \*

(b) Failure To Comply with Order. \* \*

(2) *Sanctions Against a Party.* If a party \* \* \* fails to obey an order to provide or permit discovery, \* \* \* the court may make such orders in regard to the failure as are just and among others the following:

\* \* \* \* \* \*

(C) An order striking out pleadings or parts thereof, or staying further proceedings unless the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; \* \* \*.

The defendant contends in connection with Rule 37 that the plaintiffs' latest responses to the defendant's Third Set of Interrogatories are again "grossly inadequate" in content and evidence the fact that the plaintiffs have not completed their discovery as directed by the Court in its order of September 10, 1986. These derelictions, the defendant asserts, warrant the extreme sanction of dismissal. That the defendant's assertions of inadequacy and incompleteness are true, are borne out by an examination of plaintiffs' responses to the defendant's Third Set of Interrogatories.

Interrogatories numbered 3 through 7 of the defendant's third set requested the following information:

3. State the name and present address of each expert you reasonably expect to call as a witness at the trial of this cause; and as to each such witness, state the following:

a. His profession;

b. His position or occupation, giving the name and address of his present employer, and the names and addresses of all employers by whom he has been employed in a professional capacity in the last five years;

c. His educational background, including the names and addresses of all colleges or universities attended, the years of attendance, and the degrees earned;

d. The names and addresses of all professional societies or organizations of which he is a member or has been a member during the last five years; and

e. All magazines, journals, books, or other publications in which he has furnished any professional writing or dissertation; and as to each and every such writing or dissertation, give its title and subject matter, as well as the name, volume, year and page where such writing or dissertation can be found. \* \* \*

4. With respect to each of your expert witnesses named in answer to the preceding interrogatory, state the following information with particularity:

a. The subject matter as to which the expert is expected to testify;

b. The substance of the facts and opinions to which the expert witness is expected to testify; and

c. A summary of the grounds for each opinion.

5. As to each expert witness identified in response to preceeding [sic] question three, state:

a. Whether the person has testified as an expert or in a professional capacity in any judicial or administrative proceeding;

b. The style of the case in which such testimony was given and the date when the testimony was given;

c. The court or agency before which the person testified, and

d. The party on whose behalf the person testified.

6. As to each expert witness identified above, identify any exhibits or other documents the expert expects to rely on; and please furnish copies of such documents to defendant if they have not already been so provided.

7. Identify whether any reports relating to this litigation have been prepared by any expert witness identified above, and if so, please furnish copies of such reports to defendants.

In response to these interrogatories, the plaintiffs on December 5, 1986, identified seven expert witnesses that were to testify and provided certain information to the defendant as to each. The defendant, however, alleges that the answers are "woefully and grossly inadequate," and that they confirm that the plaintiffs have only now, after almost six years have passed, begun to prepare their case. That the defendant's allegations are on the mark are confirmed by an examination of the answers submitted by the plaintiffs.

The first expert witness identified by the plaintiffs was Mr. Steve W. Pusc, a hydrologist with the North Dakota State Water Commission. The plaintiffs indicated that Mr. Pusc would be called to authenticate a groundwater study completed by Mr. Pusc for the State Water Commission. No other summary of his testimony or explanation of what he would testify to was given to the defendant. Also, the plaintiffs indicated that Mr. Pusc had not been retained by the plaintiffs and thus "are not in a position to require a response from him to respond to interrogatories on where and if he testified." Nor were the plaintiffs at liberty to provide any documents that he may have used in completing his groundwater studies. The defendant asserts that this response is confusing, evasive and incomplete. The Court agrees.

The plaintiffs' second witness is Mr. Harley Swenson, a civil engineer and land surveyor, located in Bismarck, North Dakota. The plaintiffs hired Mr. Swenson sometime in early September 1986 to prepare engineering analysis reports in regard to its claims of flooding, groundwater inundation and erosion. Again, there is no summary of what he is to testify to and the reports are not complete and available. As stated by the plaintiffs:

7. Reports have not been prepared at this time. Two posts have been installed scaled to sea level at each end of the properties and are being monitored for the freeze up innundation [sic]. After this material is available to check the preliminary material, a report will be made and opportunity to copy. At present, the report is in the deliberative process.

Clearly this answer does not conform to interrogatory 4b and is thus incomplete and inadequate. Moreover, this response convincingly confirms the fact that the plaintiffs' discovery is nowhere near complete in direct violation of this Court's order of September 10, 1986.

The plaintiffs' third witness is Mr. William L. Mills, an electrical engineer, located in Beaverton, Oregon, and is the son of the plaintiffs' counsel in this case. Mr. Mills is to provide computer assisted calculations and graphics in a report to be presented at trial in regard to the acreage flooded as a result of river stage and other matters. Again there is no summary of his expected testimony and the report is not complete and available. As stated by the plaintiff:

Much of the material has been submitted to or received from Defendant. When the computations and reports are completed and checked against the ongoing measurements on the installed posts this winter, the material will be made available for examination and copying. In the meantime, some of it is in the deliberative process and the balance is readily available to Defendant from the sources indicated.

The plaintiffs' fourth witness is Mr. Richard Dreher, a sand and gravel operator, located in Mandan, North Dakota. Mr. Dreher is to testify as a land value expert, and is expected to testify as to the presence of gravel in commercial qualities on the subject properties. Again, there is no summary of his expected testimony and the plaintiffs' answers advise that if any reports are to be prepared, they will be provided to the defendant at a later date.

The plaintiffs' fifth expert is Mr. Harry R. Arneson, Jr., a real estate appraiser, located in Fargo, North Dakota. Mr. Arneson is to testify to the value of the land allegedly taken, based on a 1973 land appraisal report. The plaintiffs categorically refuse to provide the defendant with a copy

of the 1973 report, as evidenced by the following response:

6. The documents relied upon are listed in the appraisal report. After commencement of this case, John R. Schlotman, Staff Appraiser, U.S. Army Corps of Engineers, Omaha District, was provided with the report and examined same and made notes and copies. Efforts to obtain these notes and records from the Defendant resulted in a refusal to produce. If the Defendant can't find their copy, they can have access to ours for copying. They have personnel in Bismarck whom we would trust with our copy, and who would not lose it. We will not, however, make another copy.

In addition, there is no summary of the expert's expected testimony contained in the plaintiffs' answers, that would give the defendant some idea of the substance of what the expert was to testify to.

The plaintiffs' sixth expert is Mr. Lyle W. Porter, a real estate appraiser, located in Bismarck, North Dakota. Mr. Porter is to testify regarding the value of the land eroded away and the diminution in value due to the ground inundation. The plaintiffs' answers indicate that a real estate appraisal report has not been prepared, however, if one is prepared, it would be furnished to the defendant.

The plaintiffs' seventh and final witness is Mrs. Betty L. Mills, the plaintiffs' counsel's wife and a resident of Bismarck, North Dakota. Although Mrs. Mills is not designated as an expert witness, plaintiffs indicate in their answers that she will testify to the value of the properties at issue. No information as to the support for her testimony was described or produced.

■ The answers discussed above clearly confirm to the Court that the plaintiffs have in fact failed to adequately respond to the defendant's interrogatories and failed to complete discovery by December 9, 1986, as ordered by the Court. The plaintiffs' answers were contentious, evasive, and incomplete. This inadequacy coupled with the failure on the part of the plaintiffs to complete discovery on a date certain as ordered by the Court fully justifies the extreme sanction of dismissal, pursuant to Rule 37(b)(2)(C).

If a party "fails to obey an order to provide or permit discovery * * * the court may make such orders in regard to the failure as are just" including, dismissal of all or any part of the action. RUSCC 37(b)(2)(C). See Roadway Express Inc. v. Piper, 447 U.S. 752, 763, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980); Wright v. United States, 2 Cl.Ct. 409, 414 (1983), aff'd, 728 F.2d 1459 (Fed.Cir.1984), cert. denied, 469 U.S. 844, 105 S.Ct. 153, 83 L.Ed.2d 90 (1984). Such drastic sanction is not to be imposed, however, unless the failure to comply is "attributable to willfulness, bad faith, fault, or disregard of a party's responsibilities, * * *." Wright v. United States, 2 Cl.Ct. at 414. See also National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747 (1976). Metadure Corp. v. United States, 6 Cl.Ct. 61 (1984).

The purpose of the discovery process is to secure the "just, speedy, and inexpensive determination of every action," RUSCC 1(a)(2), by narrowing and defining the issues to be litigated. That highly desirable goal has been wholly frustrated here. Instead, over the years this case has required both vast amounts of scarce judicial resources, and the obvious expenditure by the Government of considerable time, money, and effort. At least a substantial portion of the Court's and the Government's efforts herein can fairly be attributed to an unjustifiable failure to furnish direct and understandable responses to simple and straightforward questions concerning facts relevant to the claims asserted by plaintiffs in this case. This Court considers the responses given by the plaintiffs to be grossly inadequate and, in conjunction with its failure to complete discovery as ordered by this Court, to be a product of the plaintiffs' counsel's willful disregard for his responsibility to this Court.

There is no indication whatsoever that further indulgence, forbearance, or the extension of time or latitude would rectify or even improve the situation. Under the circumstances, it is at last time to conclude that there has been such a serious or total failure to respond to discovery as to make dismissal an eminently reasonable and justified sanction. *See Wright v. United States, supra,* 2 Cl.Ct. at 415.

### II.

In addition to this Court's conclusion that plaintiffs' cases should be dismissed pursuant to Rule 37(b)(2)(C), it also holds that there has been a failure by the plaintiffs to prosecute their cases pursuant to Rule 41(b). RUSCC 41(b) provides in pertinent part:

> For failure of the plaintiff to prosecute or to comply with these rules *or any order of court,* the court may dismiss on its own motion or defendant may move for dismissal of an action or any claim. [Emphasis added.]

That plaintiffs have failed to prosecute their cases after nearly six long years of litigation is evidenced by the responses to the defendant's interrogatories already discussed in section I of this opinion, and their documents entitled "Analysis (17 Nov. 86)" and "Project (18 Nov. 86)" which were also included in their responses to the defendant's Third Set of Interrogatories. These documents, which outline plaintiffs' cases "are replete with 'will have to be ascertained' and 'we need to do'."

Specifically, plaintiffs' "Analysis (17 Nov. 86)" document states in pertinent part:

> *We will need to determine* the water elevations on the land and those periods of time which acreage was submerged or water-logged as a result of river stages.
> \* \* \*
>
> \*    \*    \*    \*    \*    \*
>
> *We need to ascertain* the river drop per mile at various periods and for various flows. *We can then project with reasonable accuracy* what the wells

would have read if they could have been reached during the high water periods. *We can then ascertain with reasonable probability* what the acres at various locations and elevations would have had in water involvement at various times.

> *The acreage will have to be indexed to river mile.* At certain water elevations there may be higher land between an acreage and the river. There will be low areas in which at certain stages the water can find its way in from upstream or from downstream. *These will have to be ascertained with reasonable certainty.*
>
> \*    \*    \*    \*    \*    \*

According to Corps estimates, land lying below a 13 foot stage in the Bismarck area will be flooded more often than it was prior to flood control. *It is important to ascertain what* a 13 foot stage floods. *We would like to know* what each stage from 4 foot to 15 foot would flood.

Likewise the "Project (18 Nov. 86)" document states in pertinent part:

> *We need readings* at various flows and stages and for various years at Bismarck, USGS staff and Schmidt Gauges. *This will permit us to determine* probable water elevations on the subject property at their river mile locations.
>
> *We need readings* for each well that is relevant including those since the publication of the report. *This will permit us to determine* probable well readings for the periods they were not read, and give us probable water elevations on the subject property.
>
> *We need actual readings* on the installed elevation posts as well as the contemporaneous stage and flow USGS readings on the Bismarck gauge and possible USGS staff gauge and Schmidt gauge.
>
> *We need to have a computer program* with this input so we can answer by printout the actual acreage as well as its size when we inquire of the computer what was flooded when. If we have to separate out that acreage that is below the ordinary high watermark we desig-

nate, *we should be able to* print out the discard as well as balance left innundated [sic], etc.

Project (18 Nov. 86).

Plaintiffs' own documents prove that they have barely begun to prepare their cases and have "without valid justification ignored both court-imposed deadlines and court rules." Plaintiffs were to have completed *all discovery* on December 9, 1986, so that defendant could complete its discovery and the cases could proceed to trial. It is clear that once again the plaintiffs have blithely ignored the Court's discovery schedule and substituted their own for this matter. This time, the Court will not ignore the violation of its orders. The plaintiffs have had almost six years to prepare and present their cases in a coherent and professional manner. Six years is well past long enough.

As the Federal Circuit decided in *Kadin Corp. v. United States*, 782 F.2d 175, 176–77 (Fed.Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986):

> Although dismissal is a harsh sanction, we cannot say that the Claims Court abused its discretion in dismissing the complaint here.
>
> As noted, the appellant repeatedly and without valid justification ignored both court-imposed deadlines and court rules. * * * The appellant's entire course of conduct reflected a callous disregard for the rules and regulations of the court and fell far short of the obligations an attorney owes to a court before which he is conducting litigation.

The Court believes the Federal Circuit's words are for application in the case at bar.

In addition, the Supreme Court determined in *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734, *reh'g denied,* 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112 (1962) that:

> The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the [trial court's] calendars * * *. [Footnote omitted.]

In view of the above discussion, this Court finds that there has been a failure to prosecute presented in these cases that justifies the Court's dismissal of these actions with prejudice.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss for plaintiffs' failure to comply with the Court's order compelling discovery and for failure to prosecute is granted. Accordingly, pursuant to Rule 41(b) and Rule 37(b)(2)(C), the present actions are to be dismissed with prejudice.